## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE LETTER OF REQUEST ) | |
| FROM RUSSIA ) | |
| IN THE MATTER OF ) | Misc. No. 07- |
| T.K. KRIMSON COMPANY ) | |

**GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from Russia. A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Russian authorities who are investigating a case of alleged theft through fraud of budgetary funds.

EVIDENCE SOUGHT:

The Russian authorities seek information about a company that may reside in this District and the Delaware Secretary of State's Office. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

    (a)  The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the

testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, "(t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the

information sought is for use in such proceedings in Russia and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled <u>ex parte,</u> and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE   19801
(302) 573-6277

Dated: 11/13/07

| | |
|---|---|
| **Procurator General's Office**<br>**of the Russian Federation** | Ms. Mary Ellen Warlow<br>Director<br>Office of International Affairs |
| 15A Bolshaya Dmitrovka<br>Moscow, GSP-3, 125993, Russia | U.S. Department of Justice |
| 2006.02.__/ Our ref. 35/2-3886-04 | 1301 New York Ave. NW<br>Washington, D.C. 20005 |

Dear Ms. Director:

The Procurator General's Office of the Russian Federation presents its compliments to the U.S. Department of Justice and, pursuant to the Treaty on Mutual Legal Assistance in Criminal Matters of 17 June, 1999, kindly requests legal assistance in criminal matter No. 52-2004-13 instituted under Article 159(4) of the Criminal Code of the Russian Federation on the fact of the theft through fraud of budgetary funds of the Republic of Buryatia.

Please note that the Russian legislation of criminal procedure provides for limited terms of pre-trial investigation of criminal cases. The breach thereof may affect the outcome of investigation of a criminal case, as well as bringing guilty persons to justice. You are therefore kindly asked to use your good office in order to have the request in question executed as soon as possible, by 1 August, 2006, at the latest, and transmit the documents obtained to the Procurator General's Office of the Russian Federation.

The Procurator General's Office of the Russian Federation guarantees that any information and documentation you will provide will be used for the purposes of ensuring a comprehensive, thorough and impartial investigation, and will not affect the sovereignty, security or public order of the United States of America.

Please advise the Procurator General's Office of the Russian Federation of the reasons, if any, impeding fulfillment of the request, without delay. If partially executed, we would be grateful if you could inform us of that and send the materials to our office.

The Procurator General's Office of the Russian Federation thanks you in advance for your cooperation and confirms its willingness to provide similar or another kind of legal assistance in criminal matters to the U.S. law enforcement agencies.

Enclosure: 68 pages

Chief
International Law Department            /signed/                    R.A. Adelkhanyan

Officer in charge: Mr. I.V. Monakhov
Tel.: +7 495 692 83 80

Translated into English by E. Kartashova

Procurator General's Office            U.S. Department of Justice
of the Russian Federation

6 Nizhegorodskaya Street,
Novosibirsk, 630102, Russia

2006.02.02
Our ref. 39/2-96p-2004/52-2004-13

### Re: Request for legal assistance

The Procurator General's Office of the Russian Federation presents its compliments to the U.S. Department of Justice, thanks for the cooperation and has the honor to request legal assistance as follows.

The Procurator General's Office of the Russian Federation is inquiring into criminal matter No. 52-2004-13 (please use when responding) initiated on March 19, 2004 by the Procuracy of the Republic of Buryatia based on the report by Mr Yu.V. Yarmagayev to the police and materials of the check conducted by the Ministry of Internal Affairs of the Republic of Buryatia on the fact of misappropriation through fraud of funds of the Republic of Buryatia totaling RUR 30,000,000 under Article 159(4) of the Criminal Code of the Russian Federation (please find enclosed full text of the Article).

It has been established during the course of pre-trial investigation that on July 16, 2002, there was an agreement signed by the Government of the Republic of Buryatia and the commercial company OOO TK Krimson thereby OOO TK Krimson was to develop and introduce state computerized system for financial planning and management of purchases for the state needs of the Republic of Buryatia. The assessed cost was RUR 30,000,000. Between July and September 2002, the Ministry for Economic Development and Foreign Relations of the Republic of Buryatia made four remittances of RUR 30 million total value to the settlement account of OOO TK Krimson. However, OOO TK Krimson failed to perform the works under the agreement. The check of OOO TK Krimson revealed that the company had been registered for a straw person with the use of a lost passport. According to the reports to taxation authorities, the company was not engaged in any commercial activities. The funds of RUR 30,000,000 total value transferred by the Ministry for Economic Development and Foreign Relations of the Republic of Buryatia were subsequently transmitted to accounts of other companies as follows:

On July 22, 2002, RUR 8,000,000 was transferred to the settlement account of OOO TK Krimson with OAO Joint Stock Commercial Bank Moscow Business World ("Moskovsky Delovoy Mir"), Moscow, under payment order No. 673 from acc. of the Ministry for Economic Development and Foreign Relations of the Republic of Buryatia.

Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

On July 24, 2002, RUR 14,194,325.34, including RUR 8,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to the settlement account of OOO Lekif with OAO Unitary Commercial Bank Erabank, Moscow, under payment order No. 402 from the settlement acc. of OOO TK Krimson.

On July 25, 2002, RUR 23,758,750, including RUR 8,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to settlement account 8102000201331000 of Willarden Corp. registered at Tallahassee, FL, U.S.A, with AO AsiaUniversalBank, Bishkek, Kyrgyzstan, under payment order No. 2 from the settlement account of OOO Lekif.

On July 25, 2002, RUR 8,000,000 of total RUR 78,758,750 was transferred from the account of Willarden Corp. to FINCOMBANK for passing to the account of Ridley Partners Corp. Payment under a contract without number dd. July 22, 2002 for bill purchase was referred to as the basis for the above transfer.

On July 23, 2002, RUR 2,000,000 was transferred from acc. of the Ministry for Economic Development and Foreign Relations of the Republic of Buryatia to the said settlement account of OOO TK Krimson under payment order No. 684.

On July 26, 2002, RUR 6,523,256.40, including RUR 2,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to the said settlement account of OOO Lekif under payment order No. 999 from the settlement acc. of OOO TK Krimson.

On July 29, 2002, RUR 18,904,140, including RUR 2,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to the said settlement account of Willarden Corp. under payment order No. 2 from the settlement acc. of OOO Lekif.

On July 29, 2002, RUR 2,000,000 of total RUR 18,904,140 was transferred from the account of Willarden Corp. to FINCOMBANK for passing to the account of Ridley Partners Corp. Payment under a contract without number dd. July 5, 2002 for bill purchase was referred to as the basis for the above transfer.

On July 31, 2002, RUR 10,000,000 was transferred to the above settlement account of OOO TK Krimson from the account of the Ministry for Economic Development and Foreign Relations of the Republic of Buryatia under payment order No. 706.

On August 2, 2002, RUR 14,779,446.25, including RUR 10,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to the said settlement account of OOO Lekif under payment order No. 558 from the settlement acc. of OOO TK Krimson.

Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

On August 5, 2002, RUR 31,500,000, including RUR 10,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to the said settlement account of Willarden Corp. under payment order No. 2 from the settlement acc. of OOO Lekif.

On August 5, 2002, RUR 10,000,000 of total RUR 31,550,200 was transferred from the settlement account of Willarden Corp. to FINCOMBANK for passing to the account of Ridley Partners Corp. Payment under a contract without number dd. July 11, 2002 for bill purchase was referred to as the basis for the above transfer.

On September 17, 2002, RUR 10,000,000 was transferred from the account of the Ministry for Economic Development and Foreign Relations of the Republic of Buryatia to the above settlement account of OOO TK Krimson under payment order No. 874.

On September 18, 2002, RUR 32,270,715.98, including RUR 10,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to the said settlement account of OOO Lekif under payment order No. 799 from the settlement acc. of OOO TK Krimson.

On September 19, 2002, RUR 25,300,080, including RUR 10,000,000 transmitted by the Government of the Republic of Buryatia, was transferred to the said settlement account of Willarden Corp. under payment order No. 11 from the settlement acc. of OOO Lekif.

On September 20, 2002, RUR 10,000,000 of total RUR 25,300,080 was transferred from the settlement account of Willarden Corp. to FINCOMBANK for passing to the account of Ridley Partners Corp. Payment under a contract without number dd. September 19, 2002 for bill purchase was referred to as the basis for the above transfer.

Neither FINCOMBANK nor Ridley Partners Corp. have been located so far. It is therefore impossible to identify the persons who misappropriated the funds.

According to the certificate of incorporation of Willarden Corp. registered on January 24, 2000 by the Secretary of State in Tallahassee, FL, postal address for the head office of Willarden Corp. is 3505 Silverside Road, 208H Plaza Center, Wilmington, Delaware 19810); address for the initial registered office of Willarden Corp. in Florida is c/o Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301); address for the incorporator of Willarden Corp. – Christina S. Buchanan – is c/o J.I. Amber Co. Inc. 3505 Silverside Road, 208H Plaza Center, Wilmington, DE 19810).

The necessity has arisen in the course of pre-trial investigation to study the patterns and dynamics of mutual indebtedness and mutual settlements, as well as flow of funds, between the Government of the Republic of Buryatia and OOO TK Krimson, OOO Lekif, Willarden Corp., Ridley Partners Corp., other companies involved in the above relationship.

Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

To that end, there is a need to interview witnesses – incorporator of Willarden Corp. Christina S. Buchanan and director of Willarden Corp. who held the office between 2001 and 2002 – as to the specified facts and obtain documents relevant to the criminal matter from the premises of Willarden Corp.

In order to ensure true testimony by the witnesses to be interviewed, kindly comply with the following procedure:

1. Start an interview by asking a witness to give his or her full name, current address, date and place of birth.
2. During an interview, keep a record first indicating the date on, and place at, which the interview takes place, and title/name of a U.S. official interviewing a witness. The record shall further contain data on a witness provided by the latter.
3. Advise a witness that he or she is entitled not to answer incriminating questions. A witness shall also be notified of penalty of perjury in connection with any other questions posed by the Russian party.
4. Enter on the record, beneath a witness' personal data, information that a witness has been notified by a U.S. authority of his or her right not to answer incriminating questions and penalty of perjury in connection with any other questions.
5. Ask the questions posed by the Russian party to a witness and ensure as detailed answers as possible.
6. Fully and consistently enter all the answers given by a witness on the record.
7. Read out the questions and answers thereto to a witness or ask that a witness read the record containing the questions and answers thereto entered on it himself or herself.
8. Indicate on the record whether the questions and answers thereto have been read out by a U.S. official to a witness, or read by a witness himself or herself.
9. Indicate on the record whether a witness acknowledges that the contents of the record that have been read out to him or her, or read by a witness himself or herself, are true and correct. If a witness does not acknowledge that the contents of the record are true and correct, list the amendments to be made to the record according to a witness.
10. Have a witness make a note beneath the contents of the record pursuant to 28 U.S.C. § 1746, as follows: "I hereby declare/certify/confirm/state under penalty of perjury that the foregoing is true and correct. Dated: This ____ day of _____, 20__, _____ (place), _____ (hours). (Signature of a U.S. official.)"
11. Ask a witness to put his or her signature under the signature of a U.S. official in acknowledgement of the fact that the information recorded is true and correct.

In view of the above, pursuant to the Treaty between the Russian Federation and the United States of America on Mutual Legal Assistance in Criminal Matters dd. June 17, 1999, governed by Articles 453-454 of the Russian Criminal Procedure Code,

**I KINDLY ASK you to do as follows:**

In compliance with the documents enclosed hereto.

Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

5

1. To interview as witnesses the incorporator of Willarden Corp. – Christina S. Buchanan – and director of Willarden Corp. who held the office between 2001 and 2002 as to the facts pertaining to the transfer of the misappropriated funds of the Republic of Buryatia through the settlement account of their company by asking them the following questions, and ensure detailed answers thereto:

- Who incorporated Willarden Corp.? When, under what circumstances, for what reason? Was it an independent decision of Ms Christina S. Buchanan to have the company incorporated? Did anyone ask her to do that? If so, who was that? Where are those people residing? How are they related to Willarden Corp.?
- What business has Willarden Corp. been engaged in? What is the structure of the company? What is its staff? Where is the office of the company located? Do they have any branch offices, including in foreign countries, in particular in Russia or Kyrgyzstan? Who headed, or is heading, the branch offices?
- Has Ms Christina S. Buchanan ever been involved in the activities of Willarden Corp.? Has she ever monitored the conduct of the company's executives? If yes, in what way?
- Who was, or is currently, director of Willarden Corp.? Has Ms Nina BOGDANOVA, born February 1, 1966, national of the Republic of Ukraine, ever been director? For what period? If Ms N. Bogdanova ever held the office of director, when and in what circumstances did she first meet Ms Christina S. Buchanan? In what circumstances was Ms N. Bogdanova appointed director of Willarden Corp.?
- Does Ms N. Bogdanova currently hold the office of director of Willarden Corp.? Where is she residing?
- Who opened the settlement account of Willarden Corp. with AO AsiaUniversalBank, Bishkek, Kyrgyzstan? When and for what reason? Did they ever visit Kyrgyzstan? How long did they stay there? For what reason?
- Did Willarden Corp. have any business contacts, contractual relations with Russian commercial organizations, including OOO TK Krimson, OOO Lekif? If yes, kindly obtain detailed explanations as to the type of those relations and the period during which the relations were maintained. Which of the officers of Willarden Corp. had those contacts? With which of the officers of the said Russian companies? Do they have any information on the executives and officers of OOO TK Krimson or OOO Lekif?
- Did Willarden Corp. have any business contacts, contractual relations with FINCOMBANK and Ridley Partners Corp.? If yes, kindly obtain detailed explanations as to the type of those relations and the period during which the relations were maintained. Which of the officers of Willarden Corp. had those contacts? With which of the officers of the said companies? Do they have any information on FINCOMBANK and Ridley Partners Corp.?
- Did they visit Russia? If yes, how often? When? What cities did they visit? How long did they stay there? For what reason? Did they meet in Russia with representatives of the Government of the Republic of Buryatia, OOO TK Krimson, OOO Lekif, Ridley Partners Corp.? If so, when and where did it happen? Whom did they meet with? For what reason?
- What do they know about conclusion or implementation of the agreement dd. July 16, 2002 between the Government of the Republic of Buryatia and

Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

6

- OOO TK Krimson on development and introduction of the state computerized system for financial planning and management of purchases for the state needs of the Republic of Buryatia, as well as transfer of funds under the agreement?
- What do they know about the transfer on July 25, 2002 of RUR 23,758,750 from the settlement account of OOO Lekif to that of Willarden Corp. with AO AsiaUniversalBank? On what basis was the remittance made?
- What do they know about the transfer on July 25, 2002 of RUR 78,758,750 from the settlement account of Willarden Corp. with AO AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.? On what basis was the remittance made?
- What do they know about the transfer on July 29, 2002 of RUR 18,904,140 from the settlement account of OOO Lekif to that of Willarden Corp. with AO AsiaUniversalBank? On what basis was the remittance made?
- What do they know about the transfer on July 29, 2002 of RUR 18,904,140 from the settlement account of Willarden Corp. with AO AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.? On what basis was the remittance made?
- What do they know about the transfer on August 5, 2002 of RUR 31,500,000 from the settlement account of OOO Lekif to that of Willarden Corp. with AO AsiaUniversalBank? On what basis was the remittance made?
- What do they know about the transfer on August 5, 2002 of RUR 31,550,200 from the settlement account of Willarden Corp. with AO AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.? On what basis was the remittance made?
- What do they know about the transfer on September 19, 2002 of RUR 25,300,080 from the settlement account of OOO Lekif to that of Willarden Corp. with AO AsiaUniversalBank? On what basis was the remittance made?
- What do they know about the transfer on September 20, 2002 of RUR 25,300,080 from the settlement account of Willarden Corp. with AO AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.? On what basis was the remittance made?
- Who signed documents of association of Willarden Corp. (please find enclosed copies thereof) on behalf of incorporator of Willarden Corp. Christina S. Buchanan?
- How can they explain the fact that Willarden Corp. maintained financial relationship with Russian commercial companies – OOO TK Krimson and OOO Lekif – registered for straw persons and not engaged in any business?

2. To locate Willarden Corp. and obtain the following documentation from the office thereof:

- documents pertaining to the relationship between Willarden Corp. and the Government of the Republic of Buryatia, OOO TK Krimson, OOO Lekif,

Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

- FINCOMBANK and Ridley Partners Corp. for the whole activity period of the company (agreements, arrangements, documents referring to implementation of the agreements, those pertaining to mutual indebtedness, correspondence, etc.);
- financial records used as the basis for the remittance on July 25, 2002 of 23,758,750 from the settlement account of OOO Lekif to that of Willarden Corp. with AsiaUniversalBank;
- financial records used as the basis for the remittance on July 25, 2002 of 78,758,750 from the settlement account of Willarden Corp. with AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.;
- financial records used as the basis for the remittance on July 29, 2002 of 18,904,140 from the settlement account of OOO Lekif to that of Willarden Corp. with AsiaUniversalBank;
- financial records used as the basis for the remittance on July 29, 2002 of 18,904,140 from the settlement account of Willarden Corp. with AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.;
- financial records used as the basis for the remittance on August 5, 2002 of 31,500,000 from the settlement account of OOO Lekif to that of Willarden Corp. with AsiaUniversalBank;
- financial records used as the basis for the remittance on August 5, 2002 of 31,550,200 from the settlement account of Willarden Corp. with AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.;
- financial records used as the basis for the remittance on September 19, 2002 of 25,300,080 from the settlement account of OOO Lekif to that of Willarden Corp. with AsiaUniversalBank;
- financial records used as the basis for the remittance on September 20, 2002 of 25,300,080 from the settlement account of Willarden Corp. with AsiaUniversalBank to FINCOMBANK for passing to the account of Ridley Partners Corp.

In the course of seizure, kindly have a representative of the above company make a note on a Resolution on the Conduct of Seizure certifying it was produced to him or her, and indicate the time and date of its production.

The information contained in this request is confidential and restricted since it constitutes a secrecy of investigation. We undertake to use any data you will provide for the purpose of investigation of the criminal matter only and not to transmit them to third parties. We guarantee that the data will be used without prejudice to the U.S.A., or its nationals.

The Procurator General's Office of the Russian Federation does not undertake criminal prosecution of the individuals in the U.S.A. who are related to the company whose records are sought.

The Procurator General's Office of the Russian Federation avails itself of this opportunity to thank you in advance for your cooperation in this matter, renew the

Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

8

assurance of its high consideration and express its willingness to provide on the basis of reciprocity similar legal assistance at your request.

I would be grateful if you could transmit materials of the executed request to the Division of the Procurator General's Office of the Russian Federation at the Siberian Federal District.

**Our address:** 6 Nizhegorodskaya Street, Novosibirsk, 630102, Russian Federation.

**Our tel.:** (007 383) 218 38 22 / 218 38 31.
**Our fax:** (007 383) 217 75 57 / 210 37 40.

Enclosure: Resolution on the Conduct of Seizure from Willarden Corp. – 5 pages, and a translation; copy of Resolution on Initiation of Criminal Proceedings – 2 pages, and a translation; extract from the Criminal Code of the Russian Federation – 2 pages, and a translation; extract from the Criminal Procedure Code of the Russian Federation – 16 pages, and a translation; copy of passport of Ms Nina BOGDANOVA – 1 page, and a translation; copy of Apostille – 1 page; copy of confirmation by Ms Catherine Harris – 1 page; copy of certificate of incorporation of Willarden Corp. – 2 pages; copy of application of Ms Christina S. Buchanan dd. January 24, 2000 – 1 page; copy of Articles of Association of Willarden Corp. – 7 pages.

Investigator for Major Cases
at the Deputy Procurator General
of the Russian Federation
at the Siberian Federal District

Justice Adviser            /signed/                 A.A. Chernus

Official stamp of the Procurator General's Office of the Russian Federation

Translated into English by E. Kartashova
Official seal of the Procurator General's Office of the Russian Federation
Signed by the investigator

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE LETTER OF REQUEST ) | |
| FROM RUSSIA ) | |
| IN THE MATTER OF ) | Misc No. 07- |
| T.K. KRIMSON COMPANY ) | |

ORDER

Upon application of the United States of America; and upon examination of a letter of request from Russia whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Russia and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the Russian authorities as follows:

1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

3. adopt procedures to collect the evidence requested

consistent with its use as evidence in a proceeding before a Court in Russia, which procedures may be specified in the request or provided by the Russian authorities;

    4. seek such further orders of this Court as may be necessary to execute this request; and

    5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Russian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2007.

_____
United States District Court Judge